United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DELVIN WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE NFL PLAYER SUPPLEMENTAL DISABILITY PLAN, et al.,<br><br>　　　　Defendants. | Case No. 19-CV-04236-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. No. 14 |

Plaintiff Delvin Williams ("Plaintiff"), a former National Football League ("NFL") player, sues the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan"), the Retirement Board of the Bert Bell/Pete Rozelle NFL Retirement Plan ("the Board"), and the NFL Player Supplemental Disability Plan, (collectively, "Defendants") to obtain additional disability benefits.[1] Before the Court is Defendants' motion to dismiss Plaintiff's complaint. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss with prejudice.

**I.　BACKGROUND**

---

[1] Plaintiff sues the NFL Player Supplemental Disability Plan, but the gravamen of Plaintiff's complaint concerns the terms of the Plan and the actions of the Board. *See* ECF No. 1.

1

Case No. 19-CV-04236-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

### A. Factual Background

#### 1. The Bert Bell/Pete Rozelle NFL Player Retirement Plan

The Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan") is an employee benefit plan providing retirement, disability, and related benefits to eligible professional football players. ECF No. 1 ¶ 2 ("Compl."). According to the Complaint, the Plan is an "employee benefit plan" within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3), and a pension benefit plan under Section 3(2) of ERISA, 29 U.S.C. § 1002(2). *Id.* The Board is the Plan's named fiduciary and plan administrator, *id.* ¶ 3, and the Board has discretionary authority to interpret the Plan and determine all claims for benefits, ECF No. 14-1, Ex. A § 8.2.[2]

The Plan provides four categories for total and permanent disability benefits ("T&P benefits"), and two are relevant here: Active Football benefits and Football Degenerative benefits. *Id.* § 5.1. A player is eligible for Active Football benefits "if the disability(ies) results from League football activities, arises while the Player is an Active Player, and causes the Player to be totally and permanently disabled 'shortly after' the disability(ies) arises." *Id.* § 5.1(a). In turn, the Plan defines "shortly after" as a situation where "[a] Player . . . becomes totally and permanently disabled no later than six months after a disability(ies) first arises . . . as that phrase is used in subsections (a) and (b) above [in defining benefits]." *Id.* § 5.1(f). A total and permanent disability

---

[2] Defendants ask the Court to take judicial notice of four documents. ECF No. 14-1. Exhibits A and B are true and correct copies of relevant Plan documents, and Exhibit D is the Board's November 12, 2018 decision on Plaintiff's reclassification request. The Court takes judicial notice of Exhibits A, B, and D because they are referenced in and central to Plaintiff's complaint, and Plaintiff does not oppose the request for judicial notice or dispute any facts in these exhibits. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." (internal quotation marks and citation omitted)). In fact, Plaintiff favorably notes Defendants' inclusion of Exhibit D in the opposition. *See* Opp. at 3 ("Indeed, Defendants have submitted the Board's decision in support of their motion."). The Court also takes judicial notice of Exhibit C, a copy of the September 28, 2001 district court order in *Williams v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Player Ret. Plan, et al.*, Case No. 98-CV-21071 (N.D. Cal. Sept. 28, 2001), because courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted). Plaintiff also does not oppose this request to judicially notice Exhibit C.

does not occur "shortly after" if "a Player . . . becomes totally and permanently disabled more than 12 months after a disability(ies) first arises." *Id.* "In cases falling within this six- to twelve-month period, the Retirement Board or the Disability Initial Claims Committee will have the right and duty to determine whether the 'shortly after' standard is satisfied." *Id.*

In regards to Football Degenerative benefits, a player is eligible if "the disability(ies) arises out of League football activities, and results in total and permanent disability before fifteen years after the end of the Player's last Credited Season." *Id.* § 5.1(c).

Finally, the Plan contains a reclassification provision that allows limited reclassification of prior T&P benefits from one category to another. The reclassification provision permits reclassification if a "Player shows by evidence found by the Retirement Board . . . to be clear and convincing that, because of changed circumstances, the Player satisfies the conditions of eligibility for a benefit under a different category of total and permanent disability benefits." *Id.* § 5.5(b).

### 2. Plaintiff's Requests for T&P Benefits

Delvin Williams ("Plaintiff") is a former professional football player who played in the NFL from 1974-1981. Compl. ¶ 1, 8. By virtue of his employment in the NFL, Plaintiff was a participant in the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan") and earned vested rights to benefits under the Plan. *Id.* ¶ 9.

In December 1980, Plaintiff sustained a season-ending severe neck injury. *Id.* ¶ 12. Plaintiff retired from the NFL in 1981, and as a result of his football-related injuries, Plaintiff was and is permanently disabled and unable to work. *Id.* ¶¶ 8, 15. At some time in the 1980's, Plaintiff pursued a claim for disability benefits under the Plan, but his claim was denied. *Id.* ¶¶ 29, 31.

The Plan was amended "in or around 1995," and Plaintiff again applied for T&P benefits. *Id.* ¶¶ 44, 49-50. This time around, the Board awarded Plaintiff Football Degenerative benefits but deferred a decision on the proper effective date for those benefits. *Id.* ¶¶ 50, 55. The 1995 Plan Document stated that T&P benefits would be paid "retroactive to the later of (a) the first of the month following the date of the total and permanent disability, or (b) July 1, 1993." ECF No. 14-

3

1, Ex. B § 5.1.

Plaintiff requested a July 1, 1993 effective date and produced evidence that allegedly demonstrated that Plaintiff was totally and permanently disabled before July 1, 1993. *Id.* ¶¶ 55, 56. Plaintiff's request for retroactive benefits to July 1993 was denied, however, because the Board found that the evidence did not show that Plaintiff became totally and permanently disabled earlier than July 1995. *Id.* ¶ 56.

In 1998, Plaintiff sued to overturn the Board's decision denying his request for a retroactive effective date. *Id.* ¶ 57; *Williams v. Ret. Bd. of the Bert Bell/Pete Rozelle NFL Player Ret. Plan, et al.*, Case No. 98-CV-21071, ECF No. 94 (N.D. Cal. Sept. 28, 2001); *see* ECF No. 14-1, Ex. C ("September 28, 2001 Order"). In the 1998 litigation, Plaintiff alleged, in part, that the Board abused its discretion by relying on Plaintiff's employment history and by disregarding medical evidence that demonstrated Plaintiff was totally and permanently disabled. September 28, 2001 Order at 4. The district court agreed with Plaintiff and granted partial summary judgment in Plaintiff's favor, *id.* at 6-7, but the Ninth Circuit reversed, *Williams v. Ret. Bd. of Bert Bell-Pete Rozelle NFL Player Ret. Plan & NFL Player Supplemental Disability Plan*, 61 Fed. App'x 362 (9th Cir. 2003). The Ninth Circuit explained and concluded as follows:

> We review the Board's decision for abuse of discretion, because the Plan grants discretion to the Board. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan,* 310 F.3d 1173, 1177 (9th Cir. 2002). The Board's decision must be upheld where, as here, substantial evidence in the record supports it. *McKenzie v. Gen. Tel. Co. of Cal.,* 41 F.3d 1310, 1316-17 (9th Cir. 1994).
>
> First, medical evidence supports the determination. Dr. Holmboe found, in 1983, that Plaintiff was able to engage in "supervisory employment." Dr. Harrington opined in 1984 that Plaintiff was disabled only with respect to "work which involves any significant requirement for lifting, stooping, stretching, bending, prolonged standing or walking." By implication he thus agreed with Dr. Holmboe that Plaintiff could perform supervisory or other sedentary work. In 1997, Dr. Harrington wrote that, as of May 1995, Plaintiff's "findings, symptoms, and disabilities continued unchanged"-i.e., his physical condition had not worsened-since 1984.
>
> Second, Plaintiff's work history supports the Board's determination. Plaintiff earned a salary, listed his profession as "Executive," and worked for three employers, until resigning due to medical problems. Actual employment in sedentary positions demonstrates employability in such positions.

*Id.* at 362-63.

In February 2018, Plaintiff requested that the Board reclassify his benefits to Active Football benefits. Compl. ¶¶ 66-67. Plaintiff's request was denied by letter on March 22, 2018, and Plaintiff timely appealed the denial on September 19, 2018. *Id.* ¶¶ 68-69. On November 12, 2018, the Board upheld the denial of Plaintiff's reclassification request. *Id.* ¶ 70; ECF No. 14-1, Ex. D ("November 12, 2018 Letter"). The Board concluded, among other things, that Plaintiff "[could] not possibly show that [he] satisf[ied] the 'shortly after' requirement for Active Football benefits" because "[t]he record surrounding [Plaintiff's 1995] application did not show that [Plaintiff] became totally and permanently disabled within 12 months of the end of [Plaintiff's] NFL career." November 12, 2018 Letter at 3. Furthermore, the Board explained that Plaintiff's 1998 "lawsuit precludes a finding that [Plaintiff] could possibly meet the 'shortly after' standard" because "courts examined whether [Plaintiff] [was] totally and permanently disabled prior to August 1, 1995, and rejected . . . arguments for an earlier effective date." *Id.* at 4.

### B. Procedural History

On July 23, 2019, Plaintiff filed the instant case. ECF No. 1. Defendants filed a motion to dismiss on August 29, 2019. ECF No. 14 ("Mot."). Plaintiff's opposition was due on September 12, 2019, but the parties stipulated to extend the deadline to respond to September 26, 2019. ECF No. 20. The parties also agreed to extend Defendants' deadline to file a reply to October 10, 2019. *Id.* Nonetheless, Plaintiff failed to file an opposition on September 26, 2019, and instead filed an untimely opposition on September 27, 2019. ECF No. 22 ("Opp."). Plaintiff did not identify any good cause for the delay. On October 8, 2019, Defendants filed a reply. ECF No. 24 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

5

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

6

Case No. 19-CV-04236-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

2   moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

3   (9th Cir. 2008).

### III. DISCUSSION

As noted previously, Plaintiff's opposition to Defendants' motion to dismiss was untimely, and Plaintiff did not otherwise identify any good cause for the delay. Nonetheless, the Court considers Plaintiff's opposition brief and concludes that Defendants' motion to dismiss should be granted because (1) Plaintiff's complaint fails to state a claim under Rule 12(b)(6), and (2) issue preclusion bars the instant lawsuit.

#### A. Failure to State a Claim Under Rule 12(b)(6)

Defendants first argue that Plaintiff's complaint fails to allege that Plaintiff is entitled to relief. As an initial matter, the Plan grants the Board "full and absolute discretion, authority and power to interpret, control, implement and manage the Plan and the Trust." ECF No. 14-1, Ex. A ¶ 8.2. While the default standard of review applicable to a plan administrator's decision to deny benefits is de novo review, the standard of review shifts to abuse of discretion if the plan unambiguously gives the plan administrator discretion to determine a plan participant's eligibility for benefits. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). Here, Defendants argue that an abuse of discretion standard applies, and Plaintiff does not offer any substantive response. Therefore, the Court reviews for an abuse of discretion. *See Williams*, 61 Fed. App'x at 362 ("We review the Board's decision for abuse of discretion, because the Plan grants discretion to the Board.").

As a result, the central issue before the Court is whether Plaintiff's complaint alleges sufficient facts to assert that the Board abused its discretion in denying Plaintiff's reclassification request. Defendants contend that the complaint "never discloses the basis for his reclassification request or why he meets the Plan's reclassification standard." Mot. at 7. The Court agrees with Defendants. The complaint fails to allege any facts explaining why Plaintiff believes that the Board's decision was incorrect as a matter of law. Rather, Plaintiff's complaint simply contains a

7

Case No. 19-CV-04236-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

list of conclusory allegations. For example, the Complaint simply alleges that "Defendants failed to pay benefits to which Mr. Williams is entitled under the terms of the NFL Plan" and that "Defendants' refusal to pay Mr. Williams's claim violates the terms of the Plans and applicable law." Compl. ¶¶ 76-77. Plaintiff does not allege why he is entitled to the benefits he seeks and how Defendants' actions were contrary to law or the Plan's terms.

Plaintiff responds that he "is not required to offer the facts and explain why . . . he is entitled to relief." Opp. at 4 (quotation marks omitted). Plaintiff also asserts that he is not "required to disclose the basis for his reclassification request or why [Plaintiff] meets the Plan's reclassification standard in his complaint." *Id.* (quotation marks omitted). Rather, Plaintiff argues that *Conley v. Gibson*, 355 U.S. 41 (1957), simply requires him to give "fair notice" of his claims. *Id.*

*Conley*'s pleading standard is no longer the law. *See Twombly*, 550 U.S. at 562-63 (holding that *Conley*'s pleading standard does not define "the minimum standard of adequate pleading to govern a complaint's survival"). Under *Twombly* and *Iqbal*, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff has plainly failed to meet that standard here. Accordingly, the Court GRANTS Defendants' motion to dismiss on the basis that Plaintiff has failed to state a claim under Rule 12(b)(6).

**B. Issue Preclusion**

Defendants also argue that the application of issue preclusion requires dismissal of Plaintiff's complaint. Issue preclusion "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). For issue preclusion to apply, four conditions must be met: "(1) the issue at stake was identical in

8

both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quotation marks omitted); *see also Howard*, 871 F.3d at 1041 (same). Here, Plaintiff only disputes the second criterion—whether the Ninth Circuit determined when Plaintiff's disability began. Opp. at 5.

"[I]ssue preclusion requires that an issue must have been actually and necessarily determined by a court of competent jurisdiction to be conclusive in a subsequent suit." *Janjua*, 933 F.3d at 1065 (quotation marks omitted). "Thus, issue preclusion does not apply to those issues that could have been raised, but were not . . . ." *Id.* The Ninth Circuit has held that "an issue is actually litigated when an issue is raised, contested, and submitted for determination." *Id.* at 1066 (citing Restatement (Second) of Judgments § 27, cmt. (d) (1982)). "Under this standard, neither an issue that could have, but was not, asserted . . . nor an issue that was raised but admitted was 'actually litigated.'" *Id.* Furthermore, courts often "look[] to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination." *Id.* at 1065.

Here, Plaintiff seeks reclassification in order to obtain an award of Active Football benefits, which, among other things, requires a player "to be totally and permanently disabled 'shortly after' the disability(ies) first arises." ECF No. 14-1, Ex. A § 5.1(a). In turn, the Plan defines "shortly after" as a situation where "[a] Player . . becomes totally and permanently disabled no later than six months after a disability(ies) first arises . . . as that phrase is used in subsections (a) and (b) above [in defining benefits]." *Id.* § 5.1(f). A total and permanent disability does not occur "shortly after" if "a Player . . . becomes totally and permanently disabled more than 12 months after a disability(ies) first arises." *Id.*

Therefore, in order to meet the "shortly after" requirement for Active Football benefits, Plaintiff must allege that a disability rendered him totally and permanently disabled no more than a year after his 1981 retirement. Compl. ¶ 8 (noting that Plaintiff retired in 1981). Put another way, in order to state a claim, Plaintiff must allege that the Board abused its discretion when it

9
Case No. 19-CV-04236-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1 determined that Plaintiff was not totally and permanently disabled "shortly after" Plaintiff's
2 retirement.

3 This is the precise issue litigated and decided in the prior 1998 litigation. The Ninth
4 Circuit previously held that the Board did not abuse its discretion in denying Plaintiff Active
5 Football benefits because medical evidence from 1983 and 1984 supported the determination that
6 Plaintiff was able to engage in "supervisory employment" and sedentary work, and therefore,
7 Plaintiff was not totally and permanently disabled at any time before July 1995. *Williams*, 61 Fed.
8 App'x 362-63. Additionally, the Ninth Circuit concluded that the Board did not abuse its
9 discretion in denying Plaintiff Active Football benefits because Plaintiff's work history supported
10 the Board's determination that Plaintiff was not totally and permanently disabled before July
11 1995. *Id.* at 363.

12 Insofar as there is any doubt regarding "whether an issue was in fact raised, contested, and
13 submitted for determination," "the record of the prior proceeding" dispels any uncertainty. *See*
14 *Janjua*, 933 F.3d at 1065. In the 1998 litigation, Plaintiff pointed to medical records from Dr.
15 Kevin Harrington to demonstrate that Plaintiff was disabled prior to July 1995. September 28,
16 2001 Order at 3-5; *Williams*, 61 Fed. App'x at 362. The district court and the Ninth Circuit also
17 considered Plaintiff's employment and earnings information to determine the date of Plaintiff's
18 total and permanent disability. September 28, 2001 Order at 4; *Williams*, 61 Fed. App'x at 363.
19 That evidence was central to the Ninth Circuit's holding that the Board did not abuse its discretion
20 in finding that Plaintiff did not demonstrate total and permanent disability before July 1995.
21 *Williams*, 61 Fed. App'x at 363.

22 Plaintiff offers little in terms of a substantive response, as Plaintiff's whole argument
23 regarding issue preclusion occupies a mere nine lines in the opposition brief. *See* Opp. at 5. At
24 best, Plaintiff argues that issue preclusion does not apply because the Ninth Circuit's decision was
25 "based on the particular administrative record before it at the time." *Id.* Plaintiff's complaint,
26 however, relies on the same evidence proffered in the 1998 litigation. *Richardson v. Sauls*, 319 F.
27 Supp. 3d 52, 67 (D.D.C. 2018) (holding that issue preclusion applies because a party "fail[ed] to

10

advance any new allegations that would materially change the facts" and conclusion from the prior action); *Hegedus v. Nationstar Mortg., LLC*, 2018 WL 1461747, at *3 (W.D. Va. Mar. 23, 2018) ("Important among such other circumstances in determining the applicability of issue preclusion is new evidence has become available that could likely lead to a different result." (quotation marks and internal alterations omitted) (quoting Restatement (Second) of Judgments § 29, comment (j))). Specifically, Plaintiff makes much of his medical records from Dr. Harrington, Compl. ¶¶ 33, 49 (alleging that Dr. Harrington found that Plaintiff "did not have the capacity to work because of the injuries he had sustained during his NFL career"), and seeks to explain away Plaintiff's post-NFL employment and earnings information as non-probative of Plaintiff's disability, *id.* ¶¶ 36-42.

Furthermore, the Board's November 12, 2018 decision to deny Plaintiff's reclassification request also relied on the Board's previous findings as to the date of Plaintiff's total and permanent disability. For example, the Board explained that Plaintiff "[could] not possibly show that [he] satisf[ied] the 'shortly after' requirement for Active Football benefits" because "[t]he record surrounding [Plaintiff's 1995] application did not show that [Plaintiff] became totally and permanently disabled within 12 months of the end of [Plaintiff's] NFL career." November 12, 2018 Letter at 3. Furthermore, the Board noted that Plaintiff's 1998 "lawsuit precludes a finding that [Plaintiff] could possibly meet the 'shortly after' standard" because "courts examined whether [Plaintiff] [was] totally and permanently disabled prior to August 1, 1995, and rejected . . . arguments for an earlier effective date." *Id.* at 4. In short, whether the Board abused its discretion in concluding that Plaintiff was not totally and permanently disabled before July 1995 was actually litigated and decided in the 1998 litigation.

Accordingly, issue preclusion bars Plaintiff from relitigating the question of whether the Board abused its discretion in concluding that Plaintiff was not totally and permanently disabled before July 1995, and leave to amend would therefore be futile. *See Ghalehtak v. Fay Servicing, LLC*, 304 F. Supp. 3d 877, 889 (N.D. Cal. 2018), *aff'd*, 765 Fed. App'x 168 (9th Cir. 2019) ("However, even if Plaintiffs could overcome their Rule 9(b) burden, their claim would be barred by issue preclusion and leave to amend would therefore be futile."). Furthermore, permitting

11

leave to amend would be unduly prejudicial to Defendants, as Defendants would have to relitigate a futile claim already rejected by the Ninth Circuit. *See Leadsinger*, 512 F.3d at 532. The Court therefore GRANTS Defendants' motion to dismiss the complaint with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: January 3, 2020

_____
LUCY H. KOH
United States District Judge